READ *v.* MOSBY.

(*Jackson.* June 4, 1889.)

ASSIGNMENT OF EXPECTANCIES. *Fraudulent as to creditors of assignor, when.*

Assignment without consideration of his estate in expectancy by an insolvent heir apparent is fraudulent as to his existing creditors, and will be set aside at their instance, and the property descended subjected to payment of their debts.

Cases cited and distinguished: Fitzgerald *v.* Vestal, 4 Sneed, 257; Steele *v.* Frierson, 85 Tenn., 435.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

CRAFT & CRAFT, FRAYSER & SCRUGGS, and S. J. SHEPHERD for Read.

W. P. WILSON for Mosby.

LURTON, J. Complainants are judgment creditors of E. C. Mosby, and have filed this bill, attaching the property described in the pleadings as the property of their debtor, and seek to have their judgments satisfied out of same.

The defendant, Mrs. M. F. Mosby, wife of the debtor, claims title to the attached property, which is real estate, by virtue of an instrument executed to her by her husband, and which is in the following words:

"MEMPHIS, TENN., August 20, 1884.

"Know all men by these presents, That I, E. C. Mosby, of Shelby County, Tennessee, for the consideration of the love and affection I bear her, hereby transfer to my beloved wife, M. F. Mosby, all the right, title, and interest which I may hereafter inherit, or that may be bequeathed and devised of the estate of my father, Samuel Mosby, who is also a resident of Shelby County, Tennessee. It is my meaning and intention to place my said wife in my place and stead in respect to my expectancy from my said father's estate after his death, and it is my desire and intention that all interest which I will have in the lands of which my said father shall die siezed and possessed shall vest absolutely in my said wife, and she shall have the like right to all personal effects that would be mine; and this conveyance from me to her comprehends the whole title to the lands and right to the personal property, moneys, choses in action, and assets of every nature and description.

"In witness whereof, I, E. C. Mosby, do hereby set my hand and seal the day and year above written.

"(Signed)          E. C. MOSBY."

This paper was duly acknowledged and registered before the death of Samuel Mosby.

The property attached is an undivided interest in real estate which descended to E. C. Mosby from his father, who died intestate in March, 1886. E. C. Mosby was insolvent at the time of his conveyance of this expectancy, and complainants were then creditors by judgment.

The question is whether this conveyance of a a bare expectancy by an heir presumptive is operative, when made upon no other consideration than love and affection, to vest such title and interest in the grantee as will defeat creditors of the conveyance who were creditors both when the deed was made and when by descent cast their debtor became seized of the legal title.

For the wife it has been argued by the learned counsel who have appeared for her that the expectancy, when conveyed, was not liable to creditors, and that therefore the grant is not fraudulent within the meaning of the statute of frauds.

The general rule is that, in order to invalidate a gift or other voluntary conveyance under the statute of frauds, the property must be of a kind to which the creditor can resort for payment, for otherwise he is not prejudiced by the conveyance. *Leslie* v. *Joyner*, 2 Head, 515; *Wagner* v. *Smith*, 13 Lea, 560; Adams' Equity, 147; Story's Equity Jurisprudence, 361.

No argument is necessary to establish the proposition that the expectancy of a son in the estate

of his parent is not such a property interest as is the subject of attachment by a creditor during the life of the parent, and complainants do not put their case upon any such absurd ground. In such a case the son has no property right whatever in the estate of the living parent. His hope of an interest upon his death can be denominated by no designation importing any personal interest, and hence is called an expectancy. But if this hope or expectancy imparts no such present interest as can be resorted to by creditors, can it be the subject of such a sale, grant, or assignment during the life of the parent as will operate to vest the title in the assignee when the hope has ripened into an actual interest by descent cast?

At the date of the deed under consideration it is manifest that Mr. Mosby had no title or interest in the property which subsequently came to him by descent; and his deed did not, at the time of its execution, operate to confer upon his wife any title whatever. It does not purport to convey any present interest in possession or remainder or reversion. It is not essential that one should be in the present enjoyment or possession of property in order to validate a conveyance. A vested remainder is as much an estate subject to grant as a fee-simple. So there are future estates which are contingent in which the interest is such that a valid assignment may be made: such as estates depending upon the happening of some uncertain event or limited to some uncertain person, but

based upon some existing limitation or conveyance or will. ⸗ The ordinary contingent remainder or executory devise are examples. "So there are," says Mr. Pomeroy, "a class of interests which are not present existing interests, but which depend upon some executory agreement or contract, and under which the possibility of acquiring future property exists. A Court of Equity will recognize the assignability of such possibility in proper cases, and, upon the acquisition of such property, enforce the agreement as an executory assignment." Pomeroy's Equity, 1286, and cases cited.

Personal property not *in esse* is not the subject of sale, as a general rule. Upon this subject Mr. Benjamin says:

"Things not yet existing, which may be sold, are those which are said to have a potential existence—that is, things which are the natural product or expected increase of something already belonging to the vendor. A man may sell the crop of hay to be grown on his field, the wool to be clipped from his sheep at a future time, the milk that his cows will yield in the coming month, and the sale is valid." 1 Benjamin on Sales, 95.

So the sale of an unborn colt has been held valid and to pass the title to the colt when it comes. *McCarty* v. *Blevins*, 5 Yerg., 195. So a crop to be raised upon land of the mortgagor is the subject of a valid mortgage. *Tedford* v. *Wilson*, 3 Head, 312; *Polk* v. *Foster*, 7 Bax., 98.

"But," says the author just quoted, "*he can only make a valid agreement to sell, not an actual sale*, where the subject of the contract is something to be afterward acquired, as the wool of any sheep, or the milk of any cow, or any goods to which he may obtain title within the next six months." *Ibid*, 96.

Upon this ground a mortgage upon a stock of goods out of which the conveyor is to sell and replenish, the mortgage to attach to new goods as acquired, is void. *Bank* v. *Ebbert & Co.*, 9 Heis., 153; *Bank* v. *Haselton*, 15 Lea, 217.

A seeming exception to the latter rule is the case of a mortgage by a railroad company of all its rolling stock then owned, as well as such as it might afterward acquire. Such a mortgage has been held to give to the mortgagee a prior lien on such property *only when the mortgage had been so far executed that the after-aquired property had actually come to the possession of the mortgagee*. *Clay* v. *E. T. & Va. R. R.*, 6 Heis., 421.

This was clearly upon the doctrine that such a mortgage was only an executory agreement, and its validity only upheld, as suggested by Chancellor Cooper in *Phelps* v. *Murray*, 2 Tenn. Chancery Reports, 753, upon the ground of the public interest involved in the enforcement of such contracts.

Lower than any of the property interests we have been considering is a mere expectancy, not based on any existing contract, deed, limitation, or will, such as the mere hope or expectation

of a child that it will inherit from a living parent.

At law a deed conveying such a bare future expectancy in real estate is held absolutely void, and for the reason that there was no title or property interest upon which it could operate. Speaking of the effect of such a grant, Professor Washburn, in his learned work upon the law of Real Estate, says:

"But every right is not the subject of a grant, though it relates to land or an interest therein. Thus a bare possibility of an interest which is uncertain is not grantable, though a possibility, coupled with a present interest, may be granted. It has accordingly been held that a grant by an heir apparent of an interest in his ancestor's estate, so long as his ancestor is living, conveys nothing, and is inoperative. But when an heir apparent, who was indebted to another, assigned his interest in his ancestor's estate, with a power of attorney to make all deeds, etc., necessary to receive the proceeds, it was held to give him such an interest that equity protected it against the claims of a creditor of the heir who attached the estate at the ancestor's death. * * * It must be an interest in the land existing in possession, reversion, remainder, by executory devise, or contingent remainder." 3 Washburn on Real Estate, bottom page 636.

To the same effect is the opinion of the editor of the note to the seventh edition of Smith's Lead-

ing Cases, Vol. I., 829, who cites a large number of cases as supporting the view we have expressed as to the effect of such a grant, considered apart from the effect which might result from covenants of seizin, further assurance, or of warranty.

There is much conflict in the authorities as to the operation of covenants of warranty in estopping the grantor under such a deed, and some cases have gone to the extent of holding that by operation of such covenants the estate would pass when acquired. White & Tudor's Leading Cases in Equity, 4th Ed., Vol. I., 829, and cases cited; 3 Wash. on Real Estate, bottom page 636, 637, and cases cited.

It is unnecessary to consider what would be the effect at law of such a covenant, for the reason that the grant under consideration contains no covenants of any sort. It would seem, however, that if the title should pass when acquired, as an effect of an estoppel upon the grantor, that creditors of the grantor would not be estopped to assail the deed as fraudulent under the statute of frauds. In such case the title would descend to the heir, and if the heir's covenant should operate to *then* convey the title to the grantee, such conveyance, *being operative only from the time of seizin by the heir,* would be a conveyance of an interest which could have been resorted to by the creditor, who would not be estopped to show that the deed was void as to him.

If the conveyance had been upon a good con-

sideration, this instantaneous seizin by the debtor might be insufficient to have fastened a judgment lien ·upon the land or to justify a court of equity · in subjecting the title to a creditor. *Birdwell* v. *Cain,* 1 Cold., 301; *Gregg* v. *Jones,* 5 Heis., 458.

But while such a grant is. clearly void at law, yet in certain cases such assignments are by courts of equity protected and enforced. Whether enforced upon the theory so strenuously advocated by Mr. Pomeroy in his very able work upon Equity Jurisprudence, that such a conveyance is an equitable assignment of a present possibility, which changes into an assignment of the equitable ownership as soon as the property is acquired by the grantor, or as a mere executory agreement, which will be specifically enforced by a legal conveyance and delivery of the property when acquired, can make little difference, save in cases where a specific performance is resisted by the grantor. In any view of it, the right acquired by the assignee of such an expectancy is one only cognizable and enforceable in equity. 3 Pom. Eq. Jur., Sec. 1288. Nor will a court of equity protect or enforce such a contract unless it be altogether such a one as appeals to the equitable consideration of a court. The consideration upon which it rests ought to be rigidly scrutinized, and all the purposes and circumstances of its execution inspected and considered. Such contracts are not, and ought not to be, favored in equity, even as between the parties to the agreement.

Concerning such agreements Sir John Strange, in the case of *Chesterfield* v. *Jansen*, said :

"The courts keep a strict hand over these agreements, which must, indeed, all stand on their own particular circumstances; and perhaps it is not advisable to lay down any general rule about them or more than is necessary to the relief of each particular case." 2 Vesey, 125.

In the same case Lord Hardwicke, in considering the evils likely to result from such assignments or debts created upon the credit of such expectations, said :

"In most of these cases have concurred deceit and delusion on other persons not privy to the fraudulent agreement. The father, ancestor, or relative from whom was the expectation of the estate has been kept in the dark; the heir or expectant has been kept from disclosing his circumstances and resorting to them for advice, which might have tended to his relief and also reformation; this misleads the ancestor, who has been induced to leave his estate not to his heir or family, but to a set of artful persons who have divided the spoils beforehand." *Ibid.*

The case of *Fitzgerald* v. *Vestal*, 4 Sneed, 257, has been cited by counsel for appellant as sustaining her contention that the interest assigned was not one subject to creditors. The case, on its facts, is to be readily distinguished from this one. The learned judge, in the course of his opinion sustaining the assignment as against an attaching

creditor, did say that, even if the sale had been
made for the purpose of defeating creditors, it was
the transfer of a property which the creditor could
not reach.    This was a clear inadvertance, for the
case called for no such announcement, for the opin-
ion expressly states that there was no evidence to
support the charge that the sale had been made to
defeat creditors.    Upon the contrary, the opinion
finds that the assignment was for money advanced
at the time and with the consent and approval of
the ancestor from whom the expectancy was to
come, and that he was indeed willing, and pro-
posed to give the shares of the vendors, by will,
to purchasers, but being advised that he could not
do that, then agreed to make his will as he had
before determined to do, so that the assignors
should take the interest which they, with his ap-
proval, had sold.

In the case of *Steele* v. *Frierson,* 85 Tenn., 435,
we had occasion to pass upon a similar assign-
ment.    The transfer in that case was to pay a
surety who, for the assignor, had been compelled
to pay a very large sum.    The debt was a highly
meritorious one, and the assignment was in the
most absolute good faith, and it was therefore up-
held by this Court.

The assignment, under which Mrs. Mosby claims,
was made by an insolvent debtor, and whether so
intended or not, it operates in law as a fraud
upon his creditors.    It was not made for a valu-
able consideration, and is nothing but a settlement

made upon the wife by a husband unable, with justice to his creditors, to make such a conveyance. Under these circumstances a court of equity cannot protect or enforce such a grant as against creditors whose debts were in existence, either at the date of the deed or at the time the grantor, by descent, became seized of the title to the property sought to be conveyed.

The decree of the Chancellor, subjecting the property to the satisfaction of complainants' debt, must be affirmed.

The case of Sarah A. Smithwick against the same parties and presenting a similar question was heard with this, and a like decree will therefore be entered affirming the decree of the Chancellor in that case.

Judge Folkes, having been of counsel, did not sit upon the hearing of this case.

Special Judge W. M. Randolph, who sat in his place, does not concur in the conclusion reached.