GLENN v. BURNS.

(*Nashville.* February 2, 1898.)

LIFE INSURANCE. *Rights of beneficiaries defined.*

Under a life policy payable to insured's wife, should she survive him, otherwise to their children, the latter take several and transmissible interests immediately upon delivery of the policy, subject to the contingency of the wife's survival, and when the insured survives his wife and dies, leaving children and the representatives of deceased children, the latter participate in the policy to the same extent their parents would, if living.

Cases cited and approved: Read v. Mosby, 87 Tenn., 759; 42 Conn., 60; 102 N. C., 115; 79 N. C., 303; 89 Iowa, 396 (S. C., 48 Am. St. Rep., 396); 7 Met., 363.

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County. H. H. COOK, Ch.

VERTREES & VERTREES for Complainant.

C. D. BERRY, HAMILTON PARKS, and J. M. WILLIAMS for Defendant.

BEARD, J. In 1869, M. Burns, Sr., took out two policies of insurance on his own life, of the respective amounts of $10,000 and $5,000. In the

policies it was provided that this insurance should be paid to his wife, Margaret, if living at the time of his death, but in the event she should die before his decease, then "to their children for their use, or to their guardian, if under age." At the date of their issuance, Mr. and Mrs. Burns had nine living children, three of whom died before their mother. In 1885, she died, leaving surviving her husband and six children. Upon the death of Mr. Burns, which occurred several years thereafter, the insurance was paid to the complainant, Glenn, when, a controversy having arisen as to a proper distribution thereof, this bill of interpleader was filed. The record presents a single question, and that is, did the children of Mr. and Mrs. Burns take each an interest in these policies, immediately upon their delivery, and if so, were the interests of the three whose deaths antedate that of the mother transmitted to their distributees and representatives?

This question seems first to have been considered by the Supreme Court of Connecticut in the case of the *Continental Life Ins. Co.* v. *Palmer et als.*, 42 Conn., 60, upon a policy similar in its provisions to those issued to Mr. Burns, and in a controversy between the representative of a child which predeceased its mother and children who survived both the mother and father. That court, in an able and exhaustive opinion, held that each child, upon the delivery of the policy, took a transmissible interest in it, and that, the mother having died before the father,

at his death the distributee of the dead child stood in the place of its parent, and was entitled to share with the living children in the insurance fund.    On this point, the Court said: "The moment this policy was executed and delivered, it became property, and the title to it vested in some one.    It will not be claimed that it vested in the person whose life was insured.    It must have vested, then, in' all, or in a part, of the payees.    The payees consist of two parties, the wife and the children.    As only one could take and enjoy the property ultimately, it did not vest in all as tenants in common, nor did it vest in either so as to give a right to the present enjoyment of it.    It was not, however, a mere expectancy nor a naked possibility, but it was a possibility coupled with a present interest.    It was visible, tangible property, and, like any other insurance policy, it was capable of assignment, and had an appreciable value.    Each party took a conditional, not an absolute, right to the whole policy.    It was not a condition precedent, but subsequent.   .   .   . The right to the policy, in a strict sense, was not contingent; the possession and enjoyment of the fund thereby created were postponed to the future, and were contingent.    This contingency applied to both parties — to the wife as well as to the children. .   .   . In respect to each, it was, then, a present right to the future enjoyment of property, but it was liable to be defeated by a subsequent contingency, and was certain to be defeated as to one of

them. That such a right is recognized as property, and is transmissible to heirs, is a proposition abundantly sustained by the authorities.''

This rule, thus announced, and enforced with so much vigor of statement, has been adopted, either upon the authority of that case or else upon considerations of a similar character, in *Estate of Conrad*, 89 Ia., 396; *Suggs* v. *Hooker*, 102 N. C., 115; *Cunningham* v. *Smith*, 79 N. C., 303.

On the other hand, the Supreme Court of New York rejects this view, and applies the class doctrine to such policies, so that, under the rule there recognized, only such children take as are alive at the death of the insured. *U. S. Trust Co.* v. *Mut. Ben. Life Ins. Co.*, 115 N. Y., 152; *Walsh* v. *M. L. Ins. Co.*, 133 N. Y., 408. In this latter case, the Justices of the general term, in distributing the proceeds of such a policy, had applied the Connecticut rule, but, on appeal, their judgment was reversed, and the "class doctrine" was adhered to, evidently on the ground of *stare decisis*. In delivering the opinion of the Supreme Court, we think Justice Gray, in reply to a strong argument at the bar against the application of this doctrine to such a contract, clearly indicates the Court's dissatisfaction with it in the following words: "If we were at liberty to treat this question at first hand, and as altogether an original one in this Court, I should say that the arguments to sustain the judgment of the general term are cogent and not easily over-

Glenn v. Burns.

come. Certainly they have a moral support in equitable considerations. But if we are to be guided in the disposition of the cases which come before us, by the principle *stare decisis*, then we must adhere to views which have been held and assented to within recent decisions."

The Supreme Court of Alabama, in *Continental L. Ins. Co.* v. *Webb*, 54 Ala., 688, coincides with New York in the application of the class doctrine to such a policy, but both Courts agree that on the delivery of the policy the children then alive have a contingent interest in it, yet they also agree in holding it nontransmissible.

We think the view of the Supreme Court of Connecticut is supported by the better reason, as well as the weight of authority. For when it is conceded that the then living children have such an interest, this is necessarily a property right, though subject to be defeated or destroyed by the contingency of the mother (the assured) outliving the father (the insured); in other words, by a condition subsequent. If property, it was none the less alienable, however much its value was affected, because contingent, and, if alienable, certainly it was transmissible.

That such an interest is the subject of disposition as other property, we think is well established. "For a long time," says Mr. Washburn, "a contingent remainder was not supposed to be the subject of alienation, because it was rather a possibility

than an estate, like the possibility of an heir at law, for instance, having the estate when his ancestor shall have died. But it is now settled that where the contingency upon which the remainder is to vest, is not in respect to the person, but the event, where the person is ascertained who is to take if the event happens, the remainder may be granted or devised, and the grantee or devisee will come into the place of the grantor or devisor with his chance of having the estate."

Mr. Jarman, in his work on Wills, Vol. II., p. 479, says: "If the gift is to children who shall live to attain a certain age, or shall survive a given period or a certain event, the death of any child pending the contingency, has, obviously, the effect of striking the name of such deceased child out of the class of presumptive objects, and, consequently, such an interest cannot devolve to representatives, as it becomes vested and transmissible at the same instant of time. Where, however, the contingency on which the vesting depends is a collateral event, irrespective of attainment to a given age and surviving a given period, the death of any child pending the contingency works no exclusion, but simply lets in the legatee's representatives for himself. Thus, where a testator bequeaths his personal estate to A, and if he shall die without having issue, then over to B: in the event of B surviving the testator, and afterwards dying in the lifetime of A, testate or intestate, his contingent or executory interest will devolve

to his executor, or administrator as the case may be.''

The Court, in *Continental Life Ins. Co.* v. *Palmer*, *supra*, gives a condensed statement of the case of *Winslow* v. *Goodwin*, 7 Met., 363, involving the question of the transmissibility of a contingent interest, as follows: ''The testator gave an estate, real and personal, in trust, for the sole and separate use of a married daughter, and, at the death of her husband, it was to be conveyed to her and her heirs. The will further provided that if she died in the lifetime of her husband, the trustee should hold it in trust for her children until they, respectively, became of age, when it was to be conveyed to them. There were nine children, all of whom were born in the lifetime of the testator. The daughter died, her husband surviving her. Two of her children died before she died, and one afterwards, all of whom died without issue. It was held that the deceased had an interest in both the real and personal estate, which was transmitted to their heirs.'' The Court, then, and properly, adds: ''That is a strong case, and is authority for holding that the children, in the present case, had an interest in the policy from its inception, which was transmissible to heirs.''

The alienability of contingent interests was also recognized by the Court, in *Read* v. *Mosby*, 87 Tenn., 759. ''There are future estates,'' said this Court, ''which are contingent, in which the interest

is such that a valid assignment may be made, such. as estates depending on some uncertain event or limited to some uncertain person, but based upon some existing limitation or conveyance or will. The ordinary contingent remainder or executory devise· are examples.''

We are satisfied to adopt the rule as announced by the Supreme Court of Connecticut, not only because we. regard it as sustained ''by the weight of authority'' (see editorial note to *Estate of Conrad*, *supra* (S. C., 48 Am. St. Rep., 396), but because, in this case, as well as 'in all similar cases, it produces results which may be reasonably assumed to have been within the contemplation of the parent who secures and carries the policies of life insurance.

In the present case no reason has been, and we think none can be, assigned why Mr. Burns, the father, in taking out the policies and making in them a contingent provision for his children, would have desired or intended to devolve their proceeds upon his surviving children, to the exclusion of the distributees of others· of that class who might die before the contingency occurred. It is a natural presumption, growing out of the relation of the parties, and strengthened by equitable considerations, that he assumed, in the event of such an emergency, the statute of distributions would be resorted to for the protection of the interest of those who stood in the room and stead of the, dead child or children.