**Curtis L. BASKIN, Plaintiff-Appellant,**

v.

**COMMERCE UNION BANK OF RUTHERFORD COUNTY, Pioneer Title Insurance Company, Ticor Title Insurance Company, Jerry L. Benefield and wife, Evelyn S. Benefield, Defendants-Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

May 16, 1986.

Application for Permission to Appeal
Denied by Supreme Court
July 28, 1986.

David A. Marlowe, Buddy D. Perry, Chattin, Perry & Marlowe, Winchester, for plaintiff-appellant.

Donald W. Jones, Diane S. Kuhn, Dearborn & Ewing, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

Plaintiff Curtis L. Baskin has appealed from the trial court's granting of defendants' motion to dismiss and the denial of his motion for summary judgment.

The pertinent facts are as follows:

Thomas M. Baskin, Sr. died testate in Rutherford County, Tennessee, on December 9, 1968. His last will and testament was probated in the County Court of Rutherford County on January 4, 1969.

The pertinent portion of Mr. Baskin's will provides:

> Item I. My will is that every species of property be kept together under the control and management of my wife, Mary Ada Baskin during her lifetime, and at her death, it is my specific desire that my farm which I now reside on, be divided equally as possible among my children and their heirs as provided in the plat attached to this will, being page 2.
>
> It is also my will that none of these plots of land may be traded, sold, given away or in any way disposed of except between my children or grandchildren during the period of twenty (20) years from the date of probate of this will.

The record does not show when the testator's wife died. However, at some point plaintiff, the grandson of Thomas M. Baskin, Sr., took his father's share of his grandfather's farm, plaintiff's father, Edward Baskin, having predeceased Thomas M. Baskin, Sr.

In September, 1973, plaintiff purchased the interests of eight of the other heirs in the farm.[1] To finance the purchase, plaintiff secured a loan from the Production Credit Association of Murfreesboro, Tennessee. The loan was secured by a deed of trust on plaintiff's portion of the farm he inherited and the portion purchased from the other heirs.

In September, 1977, plaintiff borrowed $90,000 from the defendant, Commerce Union Bank of Rutherford County (Commerce Union) and executed a deed of trust to James E. McFarland, Trustee, to secure payment of the note evidencing the loan. The proceeds of this loan were used to pay the loan at Production Credit Association and other debts of plaintiff.

Prior to obtaining the loan, Commerce Union required plaintiff to obtain a title opinion and title insurance on the property. The title opinion letter, signed by Attorney Constance A. Fouts of Murfreesboro, states in part as follows:

> Basing my opinion solely upon the matters and facts shown from my said examination of said real property indices and assuming all entries therein to have been correctly made, I am of the opinion that a good and merchantable title to the above described property is vested in [plaintiff] subject to the following observations and exceptions:
>
> ....
>
> 6. Thomas M. Baskin, Sr., an owner of record in the chain of title, transferred the property by will. His will, ... contains a provision prohibiting the disposal of the land to anyone other than his children or grandchildren for twenty years from the date of probate (01–04–69) of his will.

---

1. So far as we are able to determine from the record, four of the heirs did not sell their inter-

ests to the plaintiff.

The defendant, Pioneer Title Insurance Company,[2] issued its policy of title insurance naming Commerce Union as the insured. The policy was procured and paid for by plaintiff as a condition precedent to obtaining the $90,000 loan from Commerce Union.

The title policy did not show the restriction against alienation set forth in Attorney Fouts' title opinion letter. Plaintiff, in his affidavit, states that he did not receive a copy of the policy until after he had executed the deed of trust.

Plaintiff defaulted on the note. Commerce Union thereafter foreclosed and, at the foreclosure sale, Commerce Union was the highest bidder and the trustee executed a trustee's deed to Commerce Union on December 4, 1980. On July 31, 1981, Commerce Union conveyed the property to defendants, Jerry L. Benefield and wife Evelyn Benefield.

Plaintiff alleged in his complaint that the will of his grandfather created a spendthrift trust or, in the alternative, paragraph 2 of Item I constitutes a reasonable restriction upon alienation which must be upheld. Plaintiff further alleged that the foreclosure sale was improper and inequitable and should be set aside since the foreclosure sale was had within the twenty-year time period specified in the will.

The defendants, pursuant to Tenn.R. Civ.P. 12.02(6), moved to dismiss the complaint "on the ground that the complaint fails to state a claim against them upon which relief can be granted." Subsequently, plaintiff filed his motion seeking summary judgment.

The trial court denied plaintiff's motion for summary judgment and granted defendants' "Motion to Dismiss."

**2.** Pioneer Title Insurance Company, subsequent to the issuance of the title insurance policy, was acquired by defendant, TICOR Title Insurance Company.

**3.** 26–4–101. GROUNDS FOR DISCOVERY AND SUBJECTION.—(a) The creditor whose execution has been returned unsatisfied, in whole or in part, may file a bill in the chancery court against the defendant in the execution, and any

On appeal, plaintiff has presented twelve issues. We deem it unnecessary to address each of these issues separately. The determination of two questions will resolve this appeal. Does Thomas Baskin, Sr.'s will create a spendthrift trust? If so, the trial court erred in dismissing the complaint. If not, does Item I place a reasonable restriction upon alienation of the property?

We first discuss whether the will creates a spendthrift trust.

Plaintiff insists that Item I does create a spendthrift trust for a period of twenty years and that Commerce Union is thereby precluded, pursuant to Tenn.Code Ann. § 26–4–101(a)[3], from executing on the trust property.

 Spendthrift trusts are valid in Tennessee. *Davis v. Mitchell*, 27 Tenn. App. 182, 178 S.W.2d 889 (1943). However, "a fundamental predicate for application of [Tenn.Code Ann. § 26–4–101] is that there shall be (1) a trust, and (2) an active trust." *Sternberger v. Glenn*, 175 Tenn. 644, 649, 137 S.W.2d 269, 271 (1940). To create a spendthrift trust, three elements are necessary: (1) The property must have "proceeded from another person," (2) it must be held in trust for the debtor, not by him, and (3) the trust must be "declared by a will duly recorded or deed duly registered."

The spendthrift trust "doctrine will not be extended to apply when the instrument creating the property rights fails to (1) create a 'trust' in unmistakable terms, and (2) provide for a trustee. Lacking these elements we will not hold that property may be 'so fenced around by inhibitions and restrictions as to secure to it the inconsistent characteristic of right and enjoyment to the beneficiary

other person or corporation, to compel the discovery of any property, including stocks, choses in action or money due to such defendant, or held in trust for him, except when the trust has been created by, or the property so held has proceeded from some person other than the defendant himself, and the trust is declared by will duly recorded or deed duly registered.

and immunity from his creditors,' to use the vigorous language of an early writer. *Id.* at 649, 651, 137 S.W.2d at 272.

■ Plaintiff argues that "[w]hile it is true that T.C.A. § 26–4–101(a) requires that a 'trust be declared by will duly recorded,' it is not the declaration which must be in "unmistakable terms" but the notice to creditors that they shall have "hands off" the subject property."

We find no support for this conclusion. We are of the opinion that the whole trust must be in "unmistakable terms." Notice to creditors is not separate from the creation of the trust.

Plaintiff principally relies on *Jourolmon v. Massengill*, 86 Tenn. 81, 5 S.W. 719 (1887), to support his contention that Item I of Thomas Baskin's will creates a spendthrift trust.

The pertinent portion of the will in *Jourolmon* is:

"My will is that all the property of every kind bequeathed to my son, S.S. Massengill, in the sixth clause of my will, be vested in Dr. John W. Thornburg, as trustee, for the use and benefit of my said son; and no part of the same is to be subject to execution or other legal process for any debt or liability he may have contracted, or may here after contract. Nor is he to sell the same, nor any part thereof, but may use the rents and profits for his support and that of my wife, E.H. Massengill; but he shall have the right to dispose of the same by last will and testament."

*Id.*, 86 Tenn. at 85–86, 5 S.W. at 720.

Nothing in *Jourolmon* questions the testator's intent to create a spendthrift trust. The Court rather focused on the sufficiency of the language.

"Where real estate is devised to trustees and their heirs, to the use of or in trust for another and his heirs, the question whether or not the trustees take the legal estate depends chiefly whether the testator has imposed on the trustee any trust or duty, the performance of which requires that the estate shall be vested in

them. If so, an estate co-extensive with the duties to be performed will vest in the trustees; if not, the legal ownership will pass over to the beneficial owner."

*Id.* at 92, 5 S.W. at 722.

There can be no doubt from the language in *Jourolmon* that it was (1) the intention of the testator to create a trust, (2) to identify the *cestui que* trust, and (3) name the trustee and define his responsibilities.

■ Here, we find no language from which it could be said that there is a trust. The will does not show the testator's intent to impose specific duties on either his widow or children and grandchildren as trustees. Even if Thomas M. Baskin, Sr. had explicitly stated his desire to create a trust, the trust would have been a "dry trust." Legal ownership would have passed to the beneficial owner who would not be protected from foreclosure under Tenn.Code Ann. § 26–4–101(a).

Plaintiff also cites *Miller v. Miller*, 202 Tenn. 249, 304 S.W.2d 74 (1957), in support of his contention that a spendthrift trust was created by Mr. Baskin's will.

The pertinent language of the will in *Miller* is as follows:

After my funeral expenses and debts are paid, I hereby devise and bequeath the residue of my Estate of every kind, character, and nature, and wherever situated, to my wife, Ruth Cobb Miller, and my two sons, Walter Winfield Miller, Jr., and Richard Cobb Miller, in trust, for the following uses and purposes . . . .

*Id.* at 251–252, 304 S.W.2d at 75–76.

There can be no doubt from the foregoing language that the testator intended to create a trust, that he named the trustees and set forth the uses and purposes of the trust. The facts in *Miller* are inapposite to the facts in this case.

Plaintiff also argues that since Tennessee has not adopted § 7 of the Statute of Frauds, which requires a trust to be in writing, he has a right to show by parol evidence the context in which the testator worded his will.

In *Sanderson v. Milligan*, 585 S.W.2d 573, 574 (Tenn.1979), the Court held that a "trust may rest upon a parol agreement where the declaration of trust was made prior to or contemporaneous with a transfer...." However, the evidence to show the parol trust must be "clear, cogent and convincing." *Id.*

In this case the complaint does not allege any facts concerning an oral declaration of the testator regarding his testamentary intent. Plaintiff has presented no evidence by affidavit or otherwise showing a parol agreement between the testator and the beneficiaries.

If plaintiff wished to set up an oral trust, then it was necessary for him to allege such facts in his complaint as would do so or, in opposition to the motion to dismiss, to come forth with such facts. He failed to do so.

Thomas M. Baskin, Sr.'s will does not create a spendthrift trust.

The Chancellor was of the opinion that the words "my will" were precatory and thereby were no more than a request by the testator that the farm not be sold for a period of twenty years from the date of probate and were not binding on his heirs. We deem it unnecessary to determine if the words "my will" are mandatory or precatory. If they are precatory, then as the Chancellor held, they were no more than a request and were not binding. If the words are mandatory, then they create an unreasonable restriction on alienation.

It cannot be seriously argued that the plaintiff did not at the time he mortgaged the farm to Commerce Union and at the time of foreclosure by Commerce Union have a fee simple title to the farm.

In *Hankins v. Mathews*, 221 Tenn. 190, 425 S.W.2d 608 (1968), the testator provided in his will that his wife was to have certain real estate for life and at her death it was to pass to his nephew. However, his nephew was "to keep this property in his possession ten years before he is able to sell, mortgage or in any other manner encumber and dispose of the same, and if he should attempt to do so, then in this event the said tracts of land shall revert to the heirs at law of A.A. Hankins." *Id.* at 192, 425 S.W.2d at 609. After the death of the testator's wife the nephew executed certain deeds and leases in which he transferred the property in question to defendants.

Plaintiffs, the heirs of the testator, then filed suit alleging that, by virtue of the attempted transfer from the nephew to defendants, the property pursuant to the testator's will "had reverted to them."

The Court, quoting from Pritchards Law of Wills, Vol. 1, § 161, stated as follows:

"The power of alienation is necessarily incident to every estate in fee, and a condition in a devise of lands in fee simple altogether preventing alienation, is repugnant to the estate and void. No one can create what is in the intendment of the law an estate in fee simple and at the same time deprive the owner of those rights and privileges which the law annexes to it. Hence, a condition in a devise in fee that the devisee shall make oath that he will not dispose of the estate during his life, is void. So is a condition that land devised to several shall not be divided until the death of certain persons * * *. So are restrictions against sale until one of several devisees shall be twenty-five years old, * * *"

*Id.* at 194–195, 425 S.W.2d at 610.

The Court further quoted from *Keeling v. Keeling*, 185 Tenn. 134, 203 S.W.2d 601 (1947), as follows: "We can find no exception to the rule that conditions subsequent preventing alienation of an estate in fee, even for a limited time, are universally held void as inconsistent with the incidents and nature of the estate devised and contrary to public policy." *Id.* at 197, 425 S.W.2d at 611.

Mr. Baskin's attempt to restrain alienation is void.

■ The attempt to restrain alienation is void for another reason. An attempt upon an alienation, even if not otherwise void, is void unless there is a limitation over in the event of alienation.

In *Fowlkes v. Wagoner*, 46 S.W. 586, 590–593 (1898), the Court stated:

It may be laid down as a general rule that, unless there is a reversion or limitation over to secure obedience to a prohibition against alienation, it is wholly nugatory. ... It is clear, from an inspection of the face of the will, that the testator intended to devise to his son Thomas A. Fowlkes his entire interest in the land, without any possibility of reverter in himself or in his heirs, and without any limitation over, and that the restricting clause was merely an effort to control the use of land as against the unconditional owner in fee, and as such is clearly void.

■ Here, even if the attempted alienation was otherwise reasonable, it must fail since there is no limitation over. The will does not provide for a reverter in the event of an attempted alienation.

We have also considered plaintiff's argument that (1) "due-on-sale" clauses in mortgages have been upheld in Tennessee, *Gunther v. White*, 489 S.W.2d 529 (Tenn. 1973), (2) a "due-on-sale" clause "is nothing more than a pure restriction on alienation," (3) there is no major difference between a restriction upon alienation attached to a devise of land for the period of twenty years than a restriction upon an alienation found in a mortgage for a term of years, so therefore, (4) the restriction on alienation in Mr. Baskin's will is reasonable.

In *Gunther v. White*, plaintiff mortgaged property to the First Federal Savings & Loan Association of Chattanooga. The deed of trust securing the loan contained a clause which provided that if the plaintiff should convey the property or any interest therein to any other party, he must first obtain the written consent of the holder of the note. Thereafter, plaintiff negotiated a sale of the property which was conditioned on First Federal's consent that the purchaser assume the six and a quarter percent interest rate. However, First Federal would not agree to allow the prospective purchaser to assume unless the rate of interest was increased to eight percent.

Plaintiff filed suit alleging that "the refusal on the part of [First Federal] to permit the transfer on the basis of six and a quarter percent interest 'is not only in restraint of trade, against public policy, contrary to the provisions contained in said original note, a violation of the right to contract, but is also an act which, under the facts, unduly alienates the long established right of a party to sell and convey real estate subject to an existing mortgage.'"

The chancellor held that the acceleration was valid and, on appeal, the plaintiff presented the same contentions. The court stated:

With respect to these contentions, it is sufficient to say that they are without merit. There are no provisions in the note or the deed of trust in any way limiting appellees' right to rely on the acceleration provision.

It is inconceivable that the laws against restraint of trade could be in any way involved in this transaction, and [plaintiffs] suggest nothing to sustain this proposition.

[Defendants'] reliance on the contract is not in violation of the right to contract. To the contrary, the right to rely thereon arises out of contract.

Nor, is [defendants'] reliance on the acceleration provision "an alienation of the long established right and custom of a party to sell and convey real estate subject to an existing mortgage." The right of the mortgagor to sell his equity is not involved. The acceleration provision recognizes this right. All it does, is to provide that when the mortgagor does this, the mortgagee has the right to demand payment of his debt in full.

*Id.* at 529–530.

A "due-on-sale" clause is a matter of contract and the parties are entitled to have the contract enforced according to its terms.

After a thorough study of plaintiff's argument, we are unable to equate the "due-on-sale" clause as contained in deeds of

trust or mortgages with the restraint on alienation contained in Mr. Baskin's will.

The trial court properly dismissed plaintiff's complaint for failure to state a cause of action.

The judgment of the trial court is therefore affirmed with costs assessed against the plaintiff and the cause remanded to the trial court for the enforcement of its judgment and any further necessary proceedings.

TODD, P.J. (M.S.), and KOCH, J., concur.