I. F. ROBERTSON, Executor, v. WILLIE LANE BROWN et al.

Middle Section. February 28, 1931.

Petition for Certiorari denied by Supreme Court, May 22, 1931.

Newman Brandon, Jr., of Nashville, for appellant, I. F. Robertson, Extr.

Albert Williams and S. L. Felts, both of Nashville, for appellant, Willie Lane Brown.

P. H. Duke and Pardue & Marable, all of Ashland City, for J. F. Murff, Admr.

W. Rufus Pardue, of Nashville, for Wiles Bros. & Co.

CROWNOVER, J.   This case and the case of J. F. Murff, Administrator, v. I. F. Robertson, Executor, were heard together in the Chancery Court and by agreement were sent up to this court in one transcript, but separate decrees in each case were entered in the Chancery Court, and separate assignments of errors, briefs and arguments were filed in this court; hence we will prepare separate opinions in the two cases.

The original bill in this cause was filed by I. F. Robertson, executor of M. L. Moore, deceased, for the construction of his will, and particularly for the construction of a trust for Mrs. Lena Hale created by the will, praying that he be directed as to his duties with reference to the trust fund and with reference to the rights and interests of the parties defendant.

The bill was filed against Mrs. Willie Lane Brown, remainderman after the life estate of Mrs. Lena Hale, deceased, and all of the heirs of Garner Hale, the deceased husband and legatee of Lena Hale, and the creditors of both Lena Hale and Garner Hale, the purpose of the bill being to determine whether the remainder of the trust estate should go to the remainderman, Mrs. Willie Lane Brown, or to the administrators of the estates of Lena Hale and her husband, Garner Hale.

J. F. Murff, administrator with the will annexed of Lena Hale, deceased, filed a cross-bill against I. F. Robertson, executor, and all the heirs and devisees of M. L. Moore, asking for a full construction of said will and all of its parts, and for an accounting from said executor.

Defendant, Willie Lane Brown, filed her answer and cross-bill, seeking to recover the trust fund as remainderman of her mother, Mrs. Hale.

The heirs and creditors of Garner Hale and Mrs. Lena Hale also filed an answer.

The Chancellor held:

(1) That Lena Hale took a life estate in the Miller place, free from the control of her husband, with remainder in fee to her daughter, Willie Lane Brown.

(2) . That Sidney Moore took a general legacy of $1500, payable out of the estate after payment of specific legacies, devises and expenses of administration.

(3) That "what cash that may be on hand" consisted of the $7,414 in the lock box; the $337.99 on deposit in the Harpeth Valley Bank, the $1567.67 and the $2000 in the Kingston Springs Bank; and that one-fifth of the total sum of these items was given as a specific legacy to each of the five named, Nannie C. Moore, Willie Lane Brown, Mollie Riggan, Lena Hale and Minnie King.

(4) That Lena Hale was given as a specific legacy a one-fifth interest of the proceeds of the Deal house and the King house, which were directed to be sold.

(5) That the will did not raise, create or impose a trust on the legacies given therein to Lena Hale but that she took the same absolutely and unencumbered.

(6) That the testator died intestate as to certain personal property consisting of stocks, bonds, notes and the remainder interest in his household goods.

(7) And that the cause be referred to the master for an accounting and settlement in accordance with these holdings.

Both Willie Lane Brown and I. F. Robertson, executor, appealed from said decree to this court and assigned errors, which are, in substance, that the Chancellor erred:

(1) In holding and decreeing that the bequest of "what cash that may be on hand," contained in the seventh paragraph of the will, was a specific and not a general legacy.

(2) In holding and decreeing that the bequest of "the sum of fifteen hundred ($1500) dollars in cash" to Sidney Moore, in the sixth paragraph of the will, was a general and not a specific legacy.

(3) In holding and decreeing that testator died intestate as to certain personal property, consisting of stock, bonds, notes and the remainder interest in the proceeds of the sale of the household goods.

(4) In holding and decreeing that no trust was created by the will for Lena Hale.

(5) In not holding and decreeing that Lena Hale's only interest under said trust was merely a right or privilege to receive an allowance for expenses or for her personal maintenance out of the income of said trust fund and that she had no interest in the corpus of said fund.

M. L. Moore, of Cheatham County, made and published his last will and testament on March 16, 1925, which will is as follows:

"Know all men by these present that I M. L. Moore, now make my last will, I desire and give to my wife, Nannie G. Moore, my home place, also lot commencing North at G. W. Anderson's southeast corner, running east with front street, thence south between parallel line to Hilma St., for the use and benefit of Nannie G. Moore during her life, at death of Nannie G. Moore, the two lots go to my three daughters, Mrs. Mollie Riggan, Mrs. Minnie King, and Mrs. Lena Hale, in case of death of either one of my daughters, then to their children. The two above lots to be sold after the death of Mrs. Nannie G. Moore.

"I give to my granddaughter, Willie Lane Brown, after her death, to her son Edgar Moore Brown, lot lying west of home place and known as Hale place. I give Bettie Adams use of house now living in until her death or as long as she uses it as her home, after her death this goes back to Willie Lane Brown.

"I give to Mollie Riggan lot on north side of railroad known as Garton place fronting on County road, running north between parallel lines to William Thompson's. This lot for benefit of Mollie Riggan during her lifetime, at her death to go to her children.

"I give to Minnie King the Moss place fronting on R. R. Street and running between parallel lines to Hilma St. Also the Webb lot commencing at my corner in Richardson's southeast corner, fronting 90 feet on Hilma St., thence south between parallel lines to Walker line. These two lots are for the use and benefit of Minnie P. King during her lifetime and at her death to go to her children.

"I give to my daughter Lena Hale lot on north side of railroad fronting County road, thence north between parallel lines to William Thompson line known as Miller place, same to be

free from control of her husband and at her death this is to go to her daughter, Willie Lane Brown.

"I give and bequeath to my brother, Sidney Moore, the sum of fifteen hundred ($1500) dollars in cash.

"I give and bequeath what cash that may be on hand to my wife, Nannie G. Moore, my granddaughter, Willie Lane Brown, and my three daughters, Mrs. Mollie Riggan, Mrs. Lena Hale and Mrs. Minnie King, same to be divided equally among all five named above.

"It is requested that after estate is administered on that all cash going to Mrs. Lena Hale shall be placed in trust fund with ample allowance for her expenses and used accordingly and at her death what funds still remain in trust shall go to her daughter Willie Lane Brown.

"The two lots not mentioned in this will known as Deal house, and one as Kings house, to be sold and divided equally among my three daughters, Mrs. Mollie Riggan, Mrs. Lena Hale and Mrs. Minnie King, also my wife, Nannie G. Moore, and my granddaughter, Willie Lane Brown.

"I desire and name I. F. Robertson, of Kingston Springs, Tenn., as administrator of the above estate.

"Witness my hand and seal this March 16, 1925.

"M. L. Moore.

"J. W. Taylor, witness.

"A. L. Pendergrass, witness.

"Codicil: The piano now in my house I give to my granddaughter, William Lane Brown. The household goods are to remain in possession of my wife, Nannie G. Moore, until her death, then be sold when home is sold.

"Subscribed and sworn to before me this March 16, 1925.

"I. F. Robertson,
"Notary Public."

As will be seen, he divided his property between his second wife, his three daughters, one granddaughter and his brother.

The interest of his daughter, Mrs. Lena Hale, in his personalty, was left in trust, with remainder to his granddaughter, Willie Lane Brown, daughter of Mrs. Hale.

Mrs. Lena Hale was in the last stages of tuberculosis. Several months before the will was made, her father, M. L. Moore, had taken her to his own home where he could look after her and had prepared a screened in sleeping porch for her. She had a small sum of money which he kept in his safe and disbursed for her comfort as she needed it.

Mr. Moore disliked his son-in-law, Garner Hale, the second husband of Mrs. Lena Hale, and did not wish him to have possession of any money or property that he might give to his daughter.

Willie Lane Brown was a daughter of Mrs. Hale by a former marriage, but she had made her home with her grandfather, M. L. Moore, until her marriage to Fred Brown.

A month or two after making the foregoing will, M. L. Moore became insane, and on July 30, 1925, he attempted to make another will. In the latter will Mrs. Hale's interest was given to her absolutely.

M. L. Moore died on September 2, 1925, and was survived by the devisees and legatees under the will. He lived at Kingston Springs in Cheatham County, and his property was located there. It consisted at his death of the houses and lots set out in the will and money on deposit in banks, liberty bonds, stock in banks and household goods. The money on hand, bonds, stock, proceeds of household goods and the proceeds of the sale of the Deal house and the King house amounted to $13,504.31. Of this amount there was money on deposit in the banks at his death in the sum of $11,314.66. The proceeds of the sale of the Deal house and the King house amounted to $1075. The sale of the stock, bonds and other personalty amounted to $1114.65.

After M. L. Moore's death the first will was offered for probate by the executor. Mrs. Hale filed a contest and sought to have the will of July 30th probated. This will was strongly contested by the other heirs and devisees, as the result of which ill feelings arose between the contestants.

During the pendency of these will contest cases the executor made a partial settlement by paying a portion of the estate to the legatees and devisees, but reserved Mrs. Hale's interest, and no part of the trust fund was paid to Mrs. Hale because she declined to accept anything under the first will pending the contest.

On April 28, 1926, Mrs. Hale died, while both will contests were pending. She left a will leaving all of her estate to her husband, Garner Hale. J. F. Murff qualified as her administrator with the will annexed.

The will cases were revived in the names of J. F. Murff, administrator, and of Garner Hale.

On the trial of the will contest cases in the Circuit Court of Cheatham County, M. L. Moore's will of March 16th was established and the paper of July 30th was held not to be his will.

Before the filing of the original bill in this cause Garner Hale died and J. F. Murff was also appointed his administrator.

Claims have been filed with J. F. Murff, administrator, for the funeral expenses of Mrs. Lena Hale and Garner Hale and for at-

torneys' fees incurred by Mrs. Lena Hale in the will contest cases, but the heirs of Garner Hale say that he died hopelessly insolvent and they disclaim any interest in the estate.

1. We are of the opinion that there was no error in the decree of the Chancellor holding that the bequest of "what cash that may be on hand," contained in the seventh paragraph of the will, was a specific legacy.

That paragraph of the will is as follows:

"I give and bequeath what cash that may be on hand to my wife, Nannie G. Moore, my granddaughter, Willie Lane Brown, and my three daughters, Mrs. Mollie Riggan, Mrs. Lena Hale and Mrs. Minnie King, same to be divided equally among all five named above."

In the case of Manlove v. Gaut, 2 Tenn. Chy. App., 410, Judge Neil, on page 445, ably differentiates between specific and general legacies, and holds that "a specific legacy is a bequest of a particular article or specified part of the testator's estate which is so described and distinguished from all other articles or parts of the same as to be capable of being identified."

It is stated in 18 Amer. & Eng. Ency. of Law, 2 Ed., 714:

"A specific legacy or devise is a gift by will of a specific article or part of the testator's estate, which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing."

As is stated by the Supreme Court of Michigan in the case of Byrne v. Hume, 86 Mich., 546:

"A specific legacy is a particular and specified thing singled out of a particular fund, and if this fund fail or the specific thing bequeathed is not in existence to be carried over to the legatee, the legacy cannot be paid out of the assets of the estate."

As above stated there was cash on hand or rather deposited in banks at the death of M. L. Moore, which came into the hands of the executor, as follows:

| | |
|---|---|
| Deposit in Harpeth Valley Bank | $ 337.99 |
| Deposit in Bank of Kingston Springs | 1562.67 |
| Time deposit in Bank of Kingston Springs | 2000.00 |
| In safety deposit vault in Nashville in Fourth & First Nat'l Bank | 7414.00 |
| Total | $11314.66 |

In addition to the cash on hand the executor received the following personal property:

| | |
|---|---|
| 2 shares of bank stock in Bank of Kingston Springs, sold for | $ 290.00 |

1 share of bank stock in Harpeth Valley Bank, sold for ......................................... 105.00

3 Liberty Bonds, sold for .......................... 250.00

Household goods, given to the widow for life, and sold after her death for ........................... 378.55

Other personal property, sold for .................. 91.10

Total .................................$1114.65

We are of the opinion that the expression "what cash that may be on hand" means the money that he had on hand at his death and that the bequest is specific, but it does not include the stock, bonds and other property convertible into cash.

" 'Ready money' and 'cash,' are terms so specific as to require a stricter interpretation than the word 'money' by itself; and yet 'ready money' (and 'cash' too, as it seems) may include cash at a bank on current account, for it is subject to the depositor's check at any time. 'Ready money' does not, however, include dividends on stock uncollected and uncalled for; nor debts and claims generally, whose collection is requisite before the money is actually in hand and available. 'Cash' is a word of import at least as strict as 'ready money'; and so is 'money in hand.' " 1 Schouler on Wills, 5 Ed., sec. 505.

"Money in a banker's hands on a deposit account, whether originally withdrawable at pleasure, on producing the deposit note, or after expiration of notice to withdraw, will also pass by a bequest of 'money,' or 'ready money.' 7 D. M. & G., 55 Johns, 49.

" 'Cash' is a stricter term than money. In Beales v. Crisford, 13 Sim., 592, it was held that a promissory note, payable to order, was not included in 'cash or moneys so called' (i. e., 'cash or money commonly called cash').

"A bequest of 'money' does not pass bonds, mortgages, promissory notes, or other securities, unless the will clearly indicate an intention to that effect. The term is to be understood in its ordinary sense of gold or silver or currency. Beatty v. Lalor, 15 N. J. Eq., 108. See Morton v. Perry, 1 Met., 446.

"On the other hand, 'money' may represent the entire personal estate." 1 Jarman on Wills, 6 Amer. Ed., 724, and notes.

" 'Moneys' or 'money' will include all personal property, if that be the clear intention of the testator. Smith v. Davis, 1 Grant Cas., 158; Paul v. Ball, 31 Tex. 10." 2 Williams on Executors, 472, note 64.

The word "cash" is used in three separate paragraphs of the will, but it is not used in the same sense where the context of the will shows a different intention.

"Words occurring more than once in a will are presumed to be used always in the same sense unless a contrary intention appears from the context of the whole instrument, or unless the words are applied to different objects." 28 R. C. L., 222, sec. 183; Re Henry (Vt.), 134 Atl., 632, 49 A. L. R., 169; 1 Williams on Executors, 7 Amer. Ed., 155, note 47; 1 Schouler on Wills, 5 Ed., sec. 474a.

"Where the same words are used in different parts of a will relating to the same subject-matter, they must be presumed to be used always in the same sense if the context of the will does not show a contrary intention. But there is no inconsistency in construing the same word in the different senses in the same will, and where the context of the will shows that the word was intended by the testator to be used in different senses in the different parts of the will, it should be so construed, and this is also true where the same word is used with reference to different subjects." 40 Cyc., 1403.

Hence we hold that this clause of the will made a specific bequest and applied only to the cash on hand, that is the money on deposit in the banks, amounting to $11,314.66. This assignment of error must be overruled.

2. The second assignment, that the court erred in holding that the bequest of the sum of $1500 in cash to Sidney Moore was a general legacy, is not well made and must be overruled.

The paragraph of the will making this bequest is as follows:

"I give and bequeath to my brother, Sidney Moore, the sum of fifteen hundred ($1500) dollars in cash."

"A general legacy is one which is payable out of the general assets of the estate, and which may be satisfied without delivering any particular thing or fund forming part of the testator's estate. A specific legacy is the converse of this; it is the bequest of a specific article of the testator's estate, and necessitates the delivery of that identical thing, distinguished from all others of the same kind. Whether a legacy is specific or general, depends wholly upon the language of the will; and as a rule and the courts are inclined to lean strongly against that construction of a will which makes a legacy specific rather than general." Sizer's Pritchard on Wills & Admn., sec. 460; 1 Schouler's Personal Property, secs. 561-2; 40 Cyc., 995; 18 Am. & Eng. Ency. of Law, 2 Ed., 711.

"Gifts of money where the amounts only are given are always general legacies." Sizer's Pritchard on Wills & Admn., sec. 460; 18 Am. & Eng. Ency. of Law, 2 Ed., 712 c.

3. The third assignment, that the Chancellor erred in holding that the testator died intestate as to certain personal property, consisting

of stock, bonds, notes and the proceeds of the sale of the remainder interest in the household goods and other personalty, amounting to $1114.65, is not well taken and must be overruled, for the reason that it will take all of the proceeds of this personalty to pay the general legacy to Sidney Moore and the debts of the estate, and the testator did not, therefore, die intestate as to any part of his property. But if it were otherwise, we are of the opinion that the interest of Mrs. Lena V. Hale in said fund was bequeathed to her in trust under the trust clause in the eighth paragraph of the will, which will be considered in the fourth section of this opinion.

"Testator is presumed to have intended to dispose of his entire estate, and law favors vesting of estates." Plummer v. Brown, 287 S. W., 316; Adkisson v. Adkisson, 4 Higgins, 453; Sizer's Pritchard on Wills & Admn., sec. 386.

4. The fourth assignment of error, that the Chancellor erred in holding that no trust was created by the will for Mrs. Lena Hale, is well taken and must be sustained.

The eighth paragraph of the will is as follows:

"It is requested that after estate is administered on that all cash going to Mrs. Lena Hale shall be placed in trust fund with ample allowance for her expenses and used accordingly and at her death what funds still remain in trust shall go to her daughter Willie Lane Brown."

It was contended for Mrs. Hale that no trust was created by this section:

(a) That paragraphs seven and nine of the will are specific and absolute dispositions and are not modified in any way by this trust section of the will.

(b) That the trust is formed by precatory words.

(c) That no trustee is named and no title is vested in a trustee.

A bequest of an absolute title may be modified by a subsequent clause which limits the bequest for life. Where a fee simple estate is given in the usual terms a subsequent clause in the will may defeat such estate and limit it for life or for years if such be the intention of the testator. Carson v. Carson, 115 Tenn., 37, 88 S. W., 175.

"If a testator in one part of his will gives to a person an estate of inheritance in lands, or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a life interest only, the prior gift is restricted accordingly." 1 Jarman on Wills, 436; Frank v. Frank, 120 Tenn., 581, 111 S. W., 1119; Carson v. Carson, 115 Tenn., 37, 88 S. W., 175.

Hence we are of the opinion that there is nothing in the contention that the specific bequests mentioned in paragraphs seven and nine of the will were absolute dispositions of the property. It is

plain that they are modified by this trust provision for Mrs. Hale.

We are of the opinion that the precatory words in this clause are plain and indicate precisely what the testator desired.

> "The expression of a wish or desire on the part of the testator, accompanying a devise or bequest, that a particular application shall be made of the property, is prima facie considered obligatory, and creates a trust unless an intention appear to the contrary. . . . But in order that words of recommendation, entreaty, or wish, when used in a will, shall be held to create a trust, it is necessary, first, that the words be so used that upon the whole they ought to be construed as imperative; secondly, that the subject of the recommendation, entreaty or wish be certain, and, thirdly, that the objects or persons intended to have the benefit of it be also certain. Where there is sufficient certainly of subject and object, the real question in every case is whether the expression of the wish or recommendation by the testator was meant to control the conduct of the person to whom it is addressed or was merely intended to indicate what he supposed would be a reasonable exercise of the discretion of such person, without intending to control it." Sizer's Prichard on Wills & Admn., sec. 455; 40 Cyc., 1734-7; 1 Perry on Trusts, 7 Ed., sec. 114; Ensley v. Ensley, 105 Tenn., 106, 58 S. W., 288; Hill v. Page, 36 S. W., 735; Anderson v. Hammond, 2 Lea., 281.

In fact the reading of this clause shows that the testator actually intended the trust to be mandatory upon the devisees and legatees, and that he intended to impose an obligation to carry his wishes into effect, because he did not want his son-in-law to obtain possession of any of the funds given to his daughter, Mrs. Hale. And it is explained that he wanted her to have an ample allowance for her expenses and he wanted sufficient of the funds for this "ample allowance" for her expenses to be used accordingly. And at her death he wanted what funds remained in trust to go to her daughter, Willie Lane Brown. Provisions for the maintenance and support or education of others will usually create a trust. 40 Cyc., 1746. Even an intention to create a trust may be inferred, so that a trust will be implied when not expressed. 40 Cyc., 1748.

It is insisted that no trust was created and that the testator merely expressed a desire which was left to the discretion of the legatee, Mrs. Lena Hale, and as an evidence of this he did not appoint any trustee to carry out the trust. But as above stated, we are of the opinion that the testator by the express terms of his will did create a trust and the fact that no trustee was named does not affect the situation, as it is well settled that a trust will not fail for want of a trustee. Pinson v. Ivey, 1 Yerg., 297, 332.

"The trustees need not be clearly designated or named in the will, for no trust will be allowed to fail for want of a trustee, the court having power to appoint one." 40 Cyc., 1732, 1727-8.

"It is well settled as a general rule that a testamentary trust will not fail because of failure to name a trustee, or because of refusal, death, or incapacity of the trustee named; but in such case the court will hold the heirs or representatives of the testator as trustees, or will in a proper case appoint a trustee to execute the trust, unless the will otherwise provides." 40 Cyc., 1820.

Our Supreme Court has held that a devise to a wife for her life to manage and use for her support and to go to testator's heirs at her death constitutes her a trustee for such heirs, although she be not expressly so named by the testator. Emert v. Blair, 121 Tenn., 240, 118 S. W., 685; Pilcher v. McHenry, 14 Lea, 77. Or the duties of a trustee may devolve on the executor by implication. 40 Cyc., 1764-5.

"The absence of a trustee only renders it more difficult to establish the trust in many cases, but when sufficiently established, the trust is as valid and will be as amply protected without as with a trustee." Harris v. Union Bank, 1 Coldw., 152; 1 Perry on Trusts, 7 Ed., sec. 38; Bispham's Eq., 235, sec. 136; Porter v. Lee, 88 Tenn., 782, 14 S. W., 218; Hadley v. Hadley, 100 Tenn., 446, 45 S. W., 342; Ensley v. Ensley, 105 Tenn., 124, 58 S. W., 288.

A life estate in personalty may be created without naming a trustee. Bynum v. McDowell, 3 Tenn. App., 340.

It results that we hold that the testator by this clause created a trust and that all the money going to Mrs. Lena Hale, whether cash on hand or the proceeds of the sale of the houses and lots, was created a trust fund for her benefit and that the testator intended that she should have an ample allowance for her expenses out of his trust fund which should be used for that purpose and that the balance of said trust fund should go to her daughter, Willie Lane Brown, at her death.

It is immaterial whether a trustee was named, or whether he intended that Mrs. Lena Hale should be a trustee, or whether he intended that the executor should act as her trustee, as she died before any of the fund was turned over to her, but this does not mean that she should receive no part of the fund for her "ample allowance for her expenses" or maintenance and support during the time she did live.

Hence this assignment of error is sustained.

5. The last assignment, to the effect that the Chancellor erred in not holding and decreeing that Lena Hale's only interest under

said trust was merely a right or a privilege to receive an allowance for expenses or for her personal maintenance out of the income of said trust fund and that she had no interest in the corpus of said fund, must be overruled, for we are of the opinion that by the terms of said trust clause in the will she took an interest in the corpus.

Ordinarily a bequest of money for life with remainder over, gives the legatee a right to the income only on said fund and he has no interest in the corpus, unless the will shows a contrary intention. 21 C. J., 1039; Henderson v. Vaulx, 10 Yerger, 30; 24 Am. & Eng. Ency. of Law, 2 Ed., 440. Slight indications of the intention of the testator that the first taker is to enjoy the property in specie are controlling. 21 C. J., 1039, note 15(a).

In this case the testator not only gives her a life interest in the trust fund but he further charges it to the extent that she is to have ''ample allowance for her expenses,'' which shows conclusively that he not only intended for her to have the income from this fund but that she might encroach upon the corpus to the extent necessary for her maintenance. The testator evidently meant by the expression ''ample allowance for her expenses'' that she was to have an ample allowance for her maintenance and support. The testator knew that her husband was insolvent, and she was in the last stages of consumption. He prepared a place in his own home for her, she was being supported out of funds provided by him without restriction. He knew that the trust fund provided for her could not exceed two thousand dollars, and that the income from this fund would not provide an ample allowance for her expenses; hence, he evidently intended that she might encroach upon the corpus to the extent necessary for her maintenace. We think that he meant by this expression that she should have ample maintenance and support, which includes not only board, lodging, clothes and other incidentals, but also includes doctors, nurses and medical bills necessary for her comfort during her life, and also funeral expenses at her death, which would necessarily encroach upon the corpus of this trust fund.

A power to consume property by debts is only a limited power of disposition, and the first taker will not only obtain a life estate in the property but is also entitled to that part of the corpus which will be consumed by his debts. See Carson v. Carson, supra; Dooley v. Penland, 156 Tenn., 284, 300 S. W., 9.

Where property, real and personal, is given to a wife for her control and use that she may obtain from it her support during her life, with power to encroach on the corpus if necessary for her support, she takes a life estate coupled with a limited power to charge it with her support, and the residue of the estate passes to the executor to be expended as directed in the will. Waller v.

Sproles, 160 Tenn., 11, 22 S. W. (2d), 4. To the same effect is the case of Emert v. Blair, supra.

There is no doubt that if she were living she would be entitled to an ample allowance for her maintenance, and would have a right of action to force the executor and others who held the fund to provide for the same. The fact that she died without obtaining the ample allowance for her expenses does not alter the situation, and her administrator has a right of action to recover for her maintenance from the death of her father up to the date of her death. Of course on her death the right to maintenance ceased.

"The testator by his will, after making his wife residuary devisee and otherwise providing for her, added, that it was his 'will and desire' that she should pay his nephew 'for the purpose of educating him,' a certain sum annually, commencing at a fixed date, until he came of age. The nephew died over two years after that date, but before he came of age. Held, that the legacy was valid and a personal charge on the wife, but ceased on the death of the legatee." Anderson, Admr., v. Hammond, 2 Lea, 281.

However, it is insisted that Mrs. Hale lived in some manner until she died, without obtaining the allowance for her expenses, and that as she did not recover it before her death her administrator is not now entitled to it. This identical proposition was raised and passed upon in the case of Anderson v. Hammond, supra, in which case the Supreme Court held that the administrator had a right of action to recover the amount of the legacy that had accrued during the life of the beneficiary, and the fact that he had died did not affect the right of recovery.

It was held in the case of Alsup v. Clark, 15 Lea, 71, that where a testator charged his property given to his children with a "comfortable support" for his two widowed sisters, he created a trust in favor of those sisters for a fixed support such as they were receiving when the will was made, and that the fact that the testator had not provided this support for several years did not prevent a recovery, and they had a right to go into court and have the trust set up.

The fact that no definite sum was left to these sisters did not prevent a recovery, as the amount might be definitely ascertained and adjudged by the court.

It is insisted that this clause created a spendthrift trust and that the fund was not liable for the debts of the beneficiary, Mrs. Hale. This is not tenable for two reasons: (a) This clause did not create a spendthrift trust. In order to create a spendthrift trust three things must concur: (1) The gift to the donee must be only an equitable interest in the income. (2) The legal title must be vested in a trustee. (3) The trust must be active. In other words, these

three elements must concur and the beneficiary in spendthrift trusts takes only an interest in the income and not the corpus. 1 Perry on Trusts, 7 Ed., sec. 386a, note 93. (b) Because this is a suit by the administrator of the beneficiary, Mrs. Hale, to recover for her estate, and is not a suit by her creditors to impound the fund. That matter may be settled by the administrator and her creditors if it should later arise, but is not an issue in this case. Hence the question of a spendthrift trust does not arise in this case and the proposition is immaterial.

This assignment of error must be overruled.

It results that the decree of the Chancellor must be modified as hereinabove set out, and we hold that the eighth clause of the will created a trust in favor of Mrs. Lena Hale and that her administrator will recover an amount sufficient for her maintenance from the date of the death of her father to the date of her death, as hereinabove indicated, but not her solicitors' fees in the will contest cases, but in all other respects the decree of the Chancellor is affirmed and the cause is remanded to the Chancery Court of Cheatham County for a reference to ascertain the amount in accordance with this opinion, and to this end the matter will be referred to the Clerk & Master for an accounting and a report as decreed by the Chancellor not inconsistent with this opinion.

It appearing that this cause was tried in the Chancery Court at the same time the case of J. F. Murff, Administrator, v. I. F. Robertson, Executor, was tried, and that by agreement only one transcript of the record was made out and used in both cases on appeal, and it was decreed in the case of Murff v. Robertson that one-half of the cost of the appeal in the consolidated causes should be paid by I. F. Robertson, Executor of M. L. Moore, and the surety on his appeal bond, it is therefore decreed in this case that the other one-half of the cost of the appeal will be paid by Mrs. Willie Lane Brown and the sureties on her appeal bond, for the reason that she has shown very little consideration for her invalid mother. The cost of the cause in the court below will await the final determination of the case.

Faw, P. J., and DeWitt, JJ., concur.