In re Stephen Wells WACHTER, Debtor.

Ann Mostoller, Trustee, Plaintiff,

v.

Stephen Wells Wachter, Charles M. Knowles, Trustee, and Leila Ramey Knowles, Trustee, Defendants.

Bankruptcy No. 98–33204.
Adversary No. 04–3010.

United States Bankruptcy Court, E.D. Tennessee.

July 27, 2004.

Jenkins & Jenkins Attorneys, PLLC, Edward J. Shultz, Knoxville, TN, for Plaintiff.

Egerton, McAfee, Armistead & Davis, P.C., William W. Davis, Jr., Knoxville, TN, for Defendants.

### MEMORANDUM ON MOTIONS FOR SUMMARY JUDGMENT

RICHARD STAIR, JR., Bankruptcy Judge.

The Plaintiff, Ann Mostoller, Trustee, filed the Complaint initiating this adversary proceeding on January 22, 2004, seeking a determination that a distribution to be received by the Debtor pursuant to the terms of a spendthrift trust is property of his bankruptcy estate and, accordingly, subject to turnover to the Plaintiff.

Presently before the court are the following, both filed on June 1, 2004:(1) the Plaintiff's Motion for Summary Judgment; and (2) the Motion for Summary Judgment filed by the Defendants. Both Motions are supported by memoranda of law, as required by E.D. Tenn. LBR 7007-1. Additionally, facts and documents essential to the resolution of these Motions are before the court upon the Joint Stipulations of Fact filed by the parties on June 1, 2004.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (E), and (O) (West 1993).

### I

The Debtor's mother, AnnaLyn Ramey Wachter (Mrs. Wachter), established two trusts, designated the "Credit Equivalent Trust" and "Residuary in Event Spouse Fails to Survive" Trust (Residuary Trust), under her Last Will and Testament (Will) executed on February 27, 1992. Under the terms of the Credit Equivalent Trust,

the Trustees were required to use the income from the Trust and, to the extent necessary to accomplish the purposes of this Trust, the corpus, for the maintenance, support, medical care and education of the beneficiaries, Mrs. Wachter's husband, John Wells Wachter, and her son, the Debtor. Upon the death of the Debtor's father, the Credit Equivalent Trust was to terminate with the remaining Trust assets to comprise a part of the Residuary Trust.[1]

The terms of the Residuary Trust are as follows:

## VI

## RESIDUARY IN EVENT SPOUSE FAILS TO SURVIVE

### [Residuary Trust]

In the event my said husband, JOHN WELLS WACHTER, shall not survive me, I give, devise, grant and bequeath all the rest, residue and remainder of my property, real, personal, and mixed, of whatever character or wherever situated, of which I may die seized and possessed, or which I shall be entitled to at my death, including all property over which I have testamentary power of disposition, unto CHARLES MORGAN KNOWLES and LEILA RAMEY KNOWLES ..., Co–Trustees, IN TRUST NEVERTHELESS, to be held in Trust and to be used solely for the benefit of my child, STEPHEN WELLS WACHTER.... The provisions of that Trust shall be:

A. My Co–Trustees will invest and reinvest the Trust estate and pay, or use all or any part of the net annual income from the Trust and all or any part of the principal of the Trust, as my Co–Trustees may in their uncontrolled discretion deem proper for the support, maintenance, medical care, benefit, welfare, and education of the beneficiary, either by making payment directly to said beneficiary or by making distribution to the guardian or other legal representative, wherever appointed, of such beneficiary, and the receipt of such beneficiary, guardian or other person, or evidence of the application of said funds shall be a full discharge and acquittance of my Co–Trustees to the extent of the payments made.

C.[sic] After the death of my husband, JOHN WELLS WACHTER, if he survives me, or after my death if I survive him, my Co–Trustees shall distribute one-third (1/3) of the principal of the Trust to my child, STEPHEN WELLS WACHTER, in fee; five (5) years after the death of my husband, if he survives me, or five (5) years after my death if I survive him, my Co–Trustees shall distribute one-half (1/2) of the remaining principal of the Trust to my child, STEPHEN WELLS WACHTER, in fee; and ten (10) years after the death of my said husband, if he survives me, or ten (10) years after my death if I survive him, the Trust shall terminate and my Co–Trustees shall distribute the balance of the Trust to my child, STEPHEN WELLS WACHTER, in fee.

D. In the event that my child, STEPHEN WELLS WACHTER, should die prior to taking hereunder or during the administration of the Trust for his benefit, leaving issue, I direct that the remaining principal and undistributed income of the Trust shall pass to his issue and be held by the said Co–Trustees,

1. Termination of the Credit Equivalent Trust would have required a different distribution had the Debtor died before his father. This did not occur, and the different effects of termination are not, therefore, material to the issues presently before the court.

with income and principal as deemed necessary, used for the support, education, and welfare of such issue until the youngest attains eighteen (18) years of age, at such time the Trust shall be divided equally among the beneficiaries, after charging each with prior distribution.

E. In the event that my child, STEPHEN WELLS WACHTER, should die prior to taking hereunder or during the administration of the Trust for his benefit, without issue, I direct that the share of such deceased beneficiary shall pass to CHARLES MORGAN KNOWLES and LEILA RAMEY KNOWLES.

STIP. Ex. 1.

The Will also contains the following additional provision:

## VIII

### MISCELLANEOUS PROVISIONS

. . . .

D. *Spendthrift Provisions.* The interest of a beneficiary under this Will is not subject to attachment or the claim of a creditor of a beneficiary, including the claim of a divorced spouse for alimony or support payments, and a beneficiary may not sell, assign, or encumber such interest.

STIP. Ex. 1. Mrs. Wachter died on June 29, 1992, and her Will was probated in the Chancery Court for Anderson County, Tennessee, on July 28, 1992.

The Debtor filed the Voluntary Petition commencing his bankruptcy case under Chapter 7 of the Bankruptcy Code on July 16, 1998. John Wells Wachter, the Debtor's father, died on October 9, 2002. Upon his death, the corpus of the Credit Equivalent Trust spilled-over into the corpus of the Residuary Trust, and the termination provisions of the Residuary Trust set forth in paragraph C became operative.

On January 22, 2004, the Plaintiff filed her Complaint commencing this adversary proceeding, averring that upon the death of John Wachter, the Residuary Trust terminated, and the one-third of the Trust's corpus, to which the Debtor became entitled, is property of the Debtor's bankruptcy estate under 11 U.S.C.A. § 541(a)(1) (West 1993), and therefore subject to turnover to the Plaintiff, as authorized by 11 U.S.C.A. § 542(a) (West 1993). Additionally, she seeks an accounting pursuant to 11 U.S.C.A. § 543 (West 1993). In opposition, the Debtor argues that the Residuary Trust is a valid spendthrift trust, and thus, the assets of the Residuary Trust are expressly excluded as property of the Debtor's bankruptcy estate pursuant to 11 U.S.C.A. § 541(c)(2) (West 1993).

## II

Rule 56 of the Federal Rules of Civil Procedure allows summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (applicable to adversary proceedings under Federal Rule of Bankruptcy Procedure 7056). When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter, but instead, simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of proving that there is no genuine issue of material fact, thus entitling it to judgment as a matter of law. *Owens Corning v. Nat'l Union Fire Ins. Co.,* 257 F.3d 484, 491 (6th Cir.2001). The burden

then shifts to the nonmoving party to produce specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing FED. R. CIV. P. 56(e)). The nonmoving party must cite specific evidence and may not merely rely upon allegations contained in the pleadings. *Harris v. Gen. Motors Corp.,* 201 F.3d 800, 802 (6th Cir. 2000). The facts and all resulting inferences are viewed in a light most favorable to the nonmoving party, *Matsushita,* 106 S.Ct. at 1356, whereby the court will decide whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 106 S.Ct. at 2512. "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 106 S.Ct. at 2510.

The parties agree that there are no material facts in dispute. Therefore, the sole issue before the court is whether the Debtor's present one-third interest in the Residuary Trust's corpus is property of his bankruptcy estate and subject to turnover to the Trustee.

## III

▮ The commencement of a bankruptcy case "creates an estate." 11 U.S.C.A. § 541(a). The bankruptcy estate consists of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1). Section 542 requires a debtor to turnover all property of the estate to the trustee for administration. Likewise, if property of a debtor is in the hands of custodians, including trustees of a trust, said custodians must deliver the property and any proceeds therefrom to the trustee pursuant to 11 U.S.C.A. § 543(b).

▮ Although the scope of § 541 was intended to be broad, "including interests of all types and degrees of contingency, it is limited to interests in existence at the onset of the bankruptcy case." *In re Taronji,* 174 B.R. 964, 969 (Bankr.N.D.Ill. 1994); *see also Zimmerman v. Spencer (In re Spencer),* 306 B.R. 328, 332 (Bankr. C.D.Cal.2004) ("An asset is determined to be estate property by examining the nature of the asset on the date the bankruptcy petition was filed."). Additionally, under § 541(c)(2), "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C.A. § 541(c)(2). Applicable nonbankruptcy law includes "all laws, state and federal, under which a transfer restriction is enforceable." *Forbes v. Lucas (In re Lucas),* 924 F.2d 597, 601 (6th Cir.1991) (quoting *Anderson v. Raine (In re Moore),* 907 F.2d 1476, 1477 (4th Cir.1990)); *see also Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992).

▮ "[P]roperty of a debtor falling within the definition of this exception is excluded from the bankruptcy estate." *Lucas,* 924 F.2d at 600. This includes spendthrift trusts which are "[c]haracterized by prohibitions against using trust income or corpus to satisfy creditors of the beneficiary[.]" *Bucy v. Evans (In re Evans),* 88 B.R. 813, 814 (Bankr.M.D.Tenn. 1988); *see also Shubert v. Katz (In re Katz),* 220 B.R. 556, 565 (Bankr.E.D.Pa. 1998) ("[I]t is well established that spendthrift trusts are excluded entirely from bankruptcy estates under § 541(c)(2).").

The courts in construing this exception to § 541 uniformly took the position that only the really true spendthrift trusts

would fall within this exception and if the beneficiary has any current right to reach the corpus of the trust or obtain any benefits under the trust other than that which is provided by the Trustee of the trust, it will not be recognized as an exception to § 541 and the Debtor's interest in the corpus of the trust would be properties of the estate.

*Jensen v. Davis (In re Davis)*, 110 B.R. 573, 575 (Bankr.M.D.Fla.1989). Accordingly, "spendthrift and support trusts are excluded from a debtor's bankruptcy estate to the extent they are protected from creditors under applicable state law." *Menotte v. Brown (In re McLean)*, 303 F.3d 1261, 1265 (11th Cir.2002).

## IV

The parties stipulate that the Will and the Residuary Trust created thereunder are governed by Tennessee law. Therefore, resolution of this issue hinges on Tennessee law, which recognizes the validity of spendthrift trusts. *See Jourolmon v. Massengill*, 86 Tenn. 81, 5 S.W. 719, 734–35 (1887). In fact, spendthrift trusts are addressed by the following statutory authority:

> The creditor whose execution has been returned unsatisfied, in whole or in part, may proceed in the court granting the judgment, or may file a complaint in a court of general jurisdiction against the defendant in the execution and any other person, to compel the discovery of any property, including stocks, choses in action or money due such defendant, or the defendant's interest in property held in a trust for the defendant, except when the trust has been created by, or the property so held in a trust has proceeded from, some person other than the defendant, and the trust is declared by a deed, trust agreement or duly probated will containing spendthrift provisions which apply to such defendant.

TENN. CODE ANN. § 26–4–101(a) (2001 & Supp.2003). Accordingly, the following three elements must necessarily be present: "(1) The property must have proceeded from another person, (2) it must be held in trust for the debtor, not by him, and (3) the trust must be declared by a will duly recorded[, trust agreement,] or deed duly registered." *Warrick v. Wright*, 884 S.W.2d 126, 129 (Tenn.Ct.App.1994) (quoting *Baskin v. Commerce Union Bank of Rutherford County*, 715 S.W.2d 350, 352 (Tenn.Ct.App.1986)). This statute represents "a rule of property and not an exemption statute." *Howard v. United States*, 566 S.W.2d 521, 524 (Tenn.1978).

A trust is active as long as "[a] duty is imposed on the trustee, either expressly or by implication, ... and in such case there is no merger of the legal and equitable estates, and the interest of the beneficiary, not being a legal one, is not subject to levy of execution." *Henson v. Wright*, 88 Tenn. 501, 12 S.W. 1035 (1890).

> The duty to protect the corpus of the estate from alienation, or either the corpus or income from subjection by creditors of the devisee, and the duty to see that the income was applied to the support of the son and widow during the lives of either, by necessary implication, rested upon the trustee. These were active duties, and ... make the trust an active and not a dry one.

*Jourolmon*, 5 S.W. at 724. Application of this requirement furthers "[t]he purposes of a spendthrift trust, [which] are, first, to protect the beneficiary from his own improvidence and folly, and second, to protect the corpus of the estate." *Third Nat'l Bank v. Scribner*, 212 Tenn. 400, 370 S.W.2d 482, 487 (1963). "[T]he real reason for sustaining such a trust is that as the property in it comes from another, it takes nothing from the beneficiary's creditors."

*Warrick,* 884 S.W.2d at 130 (quoting *State ex rel. v. Nashville Trust Co.,* 28 Tenn. App. 388, 190 S.W.2d 785, 790 (1944)); *see also Johnson v. Cooper (In re Cooper),* 135 B.R. 816, 819 (Bankr.E.D.Tenn.1992). The spendthrift provisions do not carry over once the beneficiary receives property from the trust. *See First Nat'l Bank of Nashville v. Nashville Trust Co.,* 62 S.W. 392, 402 (Tenn.Ch.App.1901).

There appears to be no real dispute between the parties that the Credit Equivalent Trust and Residuary Trust were valid spendthrift trusts, and after applying the above requirements, the court is convinced that they were valid spendthrift trusts. However, the Plaintiff avers that § 541(c)(2) does not apply to exclude the funds sought, arguing that as of the commencement of his bankruptcy case, the Debtor held a vested remainder interest in the corpus of the Residuary Trust which he could assign or otherwise alienate. Additionally, the Plaintiff argues that spendthrift provisions are only valid as to a trust's income, not its corpus.

## A

The first question the court must answer is whether the Debtor held a vested legal or equitable interest in the Residuary Trust as of the commencement of his bankruptcy case. "In the construction of wills, it has long been the established rule that the Courts assiduously seek to ascertain the intention of the testator, and when ascertained it will be given effect unless it contravenes some rule of law or public policy." *Burdick v. Gilpin,* 205 Tenn. 94, 325 S.W.2d 547, 551 (1959); *see also Nat'l Bank of Commerce v. Dortch,* 1987 Tenn.App. LEXIS 3051, at *6, 1987 WL 19510, at *2 (Tenn.Ct.App. Nov. 9, 1987) ("The cardinal rule in construction of all wills is that the court shall seek to discover the intention of the testator and give effect to it unless it contravenes some rule of law or public policy.").

"When one controlling or dominant purpose of a testator is expressed, it is the duty of the court to so construe his will as to effectuate this major intention, and to construe all subsidiary clauses so as to bring them into subordination." *Davis v. Mitchell,* 27 Tenn.App. 182, 178 S.W.2d 889, 912 (1943).

Similarly, "[t]he law favors the vesting of testamentary estates. If an intention to the contrary does not clearly appear, an interest will always be construed as vested rather than contingent." *Dortch,* 1987 Tenn.App. LEXIS 3051, at *7–*8, 1987 WL 19510, at *3 (citing 96 C.J.S. Wills § 932 (1957)). As a rule, "an intermediate gift of income accruing during the term of an active trust at the end of which the corpus is to be distributed among the beneficiaries, is conclusive, nothing else appearing, of the intention of the testator that an equitable, transmissible estate in fee should vest in the beneficiaries immediately upon his death." *Harris v. France,* 33 Tenn.App. 333, 232 S.W.2d 64, 72 (1950).

This rule of law also applies to spendthrift trusts. Generally, upon the creation of a spendthrift trust, the trustee is vested in legal title to the trust property, while the beneficiary is vested in equitable title. *See Jourolmon,* 5 S.W. at 722; *Tramell v. Tramell,* 162 Tenn. 1, 34 (1931). "[R]estrictions creating a pure spendthrift trust—that is, mere restraints upon alienation and anticipation, do not necessarily operate to prevent the vesting of an equitable estate in fee in the beneficiaries[.]" *Davis,* 178 S.W.2d at 907; *accord Howard,* 566 S.W.2d at 525 (finding that an "income beneficiary has a vested property right in the income generated by the trust.").

██ Under this authority, the court agrees with the Plaintiff that on the date that he filed his bankruptcy petition, the Debtor held a vested equitable interest in both the income and corpus of the Residuary Trust created under Mrs. Wachter's Will. The Will expressly states that in the event that the Debtor did not outlive his father, who was the Residuary Trust's other named beneficiary, the Debtor's share would be distributed to his descendants, or if he died without issue, to the Co–Trustees. Mrs. Wachter clearly intended for the Debtor, or his children, to be fully vested with legal title in both the income and corpus after termination of the Residuary Trust.

**B**

██ Having found that the Debtor held a vested equitable interest in the Residuary Trust's income and corpus as of the commencement of his bankruptcy case, the court must now determine whether, under Tennessee law, that interest was subject to alienation by the Debtor. The Plaintiff correctly argues that remainder interests may be transferred. *See Glenn v. Burns*, 100 Tenn. 295, 45 S.W. 784, 785 (1898) (recognizing the transferability of vested and contingent remainder interests). Nonetheless, the case law is clear that if a beneficiary receives an equitable, yet vested, interest pursuant to a valid spendthrift trust containing anti-alienation provisions, the intent of the testator to prevent alienation must be honored. "[W]henever the absolute equitable interest is in the *cestui que trust*, and there is no prohibition upon his power of alienation, the incidents of ownership attach, and such interest is assignable and alienable." *Henson*, 12 S.W. at 1036 (citing PERRY ON TRUSTS § 386a). The interpretation of the views expressed in *Jourolmon v. Massengill* by subsequent cases is that by virtue of

Code, Section 10353 [now 26–4–101,] an active trust within the purview of that enactment takes on the characteristics and immunities appertaining to a spendthrift trust, as that phrase is commonly understood, quite apart from any restrictions or lack of them in the instrument creating the trust, in so far as the rights of creditors are concerned, but that neither the statute, nor the usual provisions creating a strictly spendthrift trust where present, will prevent the immediate vesting of an equitable, transmissible estate in the beneficiaries of the trust unless the language of the will expressly or impliedly manifests a contrary intention on the part of the testator.

However, the line of cases which support this view also leave no doubt that an active trust can be created wherein the beneficiary takes no transmissible equitable interest in the estate and none in the income until it is paid to him, and no doubt that one was held to have been so created by the will under the consideration in the *Jourolmon* case, notwithstanding that, as we say, the real basis of the decision there was the statute[.]

*Davis*, 178 S.W.2d at 906 (citations omitted). Furthermore, Tennessee Code Annotated section 26–4–101(a) "does not exclude from its application equitable estates which may be absolutely vested in the beneficiary." *Tramell*, 162 Tenn. at 27.

The Plaintiff's argument that the Debtor's vested equitable remainder interest in the corpus of the Residuary Trust was not subject to the spendthrift provisions is based primarily upon the Tennessee Supreme Court's decision in *Howard v. United States*, in which the court was faced with the question of whether "the income from a spendthrift trust [is] subject to seizure in satisfaction of a federal tax lien[.]" *Howard*, 566 S.W.2d at 523. In

making its determination that an income beneficiary holds a vested interest in income from a spendthrift trust, the court stated that "[u]nder Tennessee law, it is essential to the creation of a spendthrift trust that (1) legal title be vested in the trustee; (2) the gift to the donee be out of an equitable interest in the income; and (3) the trust must be active." *Howard*, 566 S.W.2d at 525 (citing *Robertson v. Brown*, 13 Tenn.App. 211, 225–26 (1931)). Nevertheless, the *Howard* court expressly emphasized that it was concerned only with the beneficiary's interest in income, because it was stipulated that he was strictly an income beneficiary, holding no legal title, right of use, or possessory interest in the corpus. *Howard*, 566 S.W.2d at 523.

The Plaintiff also argues that pursuant to the *Robertson* case, cited by the *Howard* court, a valid spendthrift trust required that "[t]he gift to the donee must be only an equitable interest in the income[.]" *Robertson*, 13 Tenn.App. at 225. The court also acknowledges that the *Robertson* case contains a statement that "the beneficiary ... takes only an interest in income and not the corpus." *Robertson*, 13 Tenn.App. at 226 (citing 1 PERRY ON TRUSTS, 7 Ed., § 386a, n. 93). The court does not find this to be authoritative on this issue, however, because these statements are dicta, followed by the court's clarification that "the question of a spendthrift trust does not arise in this case and the proposition is immaterial." *Robertson*, 13 Tenn.App. at 226. Moreover, in *Howard*, the Tennessee Supreme Court omitted the word "only" in its finding that an income beneficiary's interest was vested and subject to a federal tax lien pursuant to the express provisions of the Internal Revenue Code, which prevailed over the Tennessee statute. *See Howard*, 566 S.W.2d at 525.

Additionally, the Tennessee Supreme Court has acknowledged the Perry treatise as follows:

Perry on Trusts and Trustees (6 Ed.), section 386, makes the general statement: "The law does not allow property, whether legal or equitable, to be fettered by restraints on alienation. Therefore, when an equitable interest is once vested in the *cestui que trust*, he may dispose of it, or it may pass to his assignees by operation of law, if he becomes a bankrupt." But in a note appended to this general observation by the editor, the text is thus qualified: "This statement, although generally true in the absence of restraint imposed by the creator of the trust, must be qualified by the established rule in many states, that valid restraints may be imposed upon a *cestui's* power of anticipating income or of alienating it before it is due."

*Tramell*, 162 Tenn. at 30 (quoting PERRY ON TRUSTS, § 386). In *Tramell*, the Tennessee Supreme Court held that although the beneficiaries to the trust were fully vested in both income and corpus, their fee was equitable in nature, and spendthrift provisions were nevertheless effective thereon. This rule of law comports with that in most jurisdictions, which have adopted the Restatement (Second) of Trusts view that "if by the terms of a trust the beneficiary is entitled to have the principal conveyed to him at a future time, a restraint on the voluntary or involuntary transfer of his interest in the principal is valid." RESTATEMENT (SECOND) OF TRUSTS § 153(1).

The Plaintiff also bases her argument on the holding of *Patton v. Winters*, 20 Tenn. App. 600, 101 S.W.2d 708 (1936), which she avers holds that spendthrift provisions only apply to trust income. The court disagrees, however, with the Plaintiff's in-

terpretation of the holding in *Patton*. The issue before the court was whether property being held in a valid spendthrift trust created by his father's will could be applied to the beneficiary's debts following his death. First, the court determined that the beneficiary "took, subject to the trust, an estate in fee simple[.]" *Patton*, 101 S.W.2d at 709. Subsequently, the court held that the corpus could be subjected to payment of the debts, and in so holding, made the following findings:

> The trust having ceased upon the death of W.M. Winters, the trust property passed to his executrix in possession, to be administered in accordance with his will and the law. In such transmission was it protected from claims of creditors incurred by him during the existence of the trust? It is insisted that freedom from such protection would mean that what the *cestui que trustent* could not do directly during his lifetime could thus be done indirectly. But the purpose of the spendthrift trust had been accomplished when he died. The corpus had been immune because of the necessity for producing an income. This necessity was over. Neither in the will of G.W. Winters [his father] nor that of W.M. Winters was there any trust created for those who would take this property after the death of W.M. Winters. Only by adhering to the proposition that at his death the property became free of the trust, except perhaps for purposes of liquidation, can this question be clearly and properly solved. The beneficiary could create the debts, but they could not be paid out of the trust estate. It was no longer held for the purposes of the trust when the beneficiary had died. Held in fee simple and the trust having ceased, the property became liable for the debts. The beneficiary was under no obligation to preserve the immunity by any testamentary provision, and this was not done by him. This case is in a different category from those cases in which it was sought to subject to the claims of creditors property held under spendthrift trusts while the *cestui que trustents* were still alive.

*Patton*, 101 S.W.2d at 710. Relying upon *Estate of Hall*, 248 Pa. 218, 93 A. 944 (1915), the court focused on the fact that the terms of the trust provided for "convey[ance of] the principal to him free from any trust or limitation whatever, [and thus,] the principal is not protected in transmission to the beneficiary ... [because] there was neither express nor implied provision for protection in transmission to the beneficiary of the corpus at the end of the trust." *Patton*, 101 S.W.2d at 710.[2]

■ The Spendthrift Provision of the Will expressly states that the interests of Mrs. Wachter's beneficiaries under the Will are not subject to attachment or execution, nor may they be sold, assigned, or encumbered. As such, at the time he commenced his bankruptcy case, the Debtor

---

**2.** The Plaintiff also cited *Warrick v. Wright*, 884 S.W.2d 126 (Tenn.Ct.App.1994), for the proposition that spendthrift provisions only protect income. In that case, however, the court of appeals found that the beneficial interest at issue was contingent, not vested, based upon the terms of the trust. *Warrick*, 884 S.W.2d at 130. Additionally, the court expressly held that

> neither the income from the trust payable to [the beneficiary] nor the principal held for his benefit is, at this time, within the reach of creditors while in the hands of the trustee. Since we believe it to be premature, we decline to decide the issue, relative to the principal, prospectively, i.e., will the distributions to be made to the beneficiary at age 35 and age 40 respectively be within the reach of creditors. Such is best left to another day when it is ascertainable that all contingencies have been met.

*Warrick*, 884 S.W.2d at 130.

held a beneficial interest in both the income and the corpus of the Residuary Trust. Nonetheless, although his interest was vested, the Debtor had no immediate right to payment of any portion of the Residuary Trust corpus. Furthermore, the terms of the Will expressly prohibited the Debtor or any other beneficiary from assigning, encumbering, or otherwise alienating any interest in the Residuary Trust property. This includes both income and corpus. As stipulated by the parties, the Co–Trustees are still in possession of the entire corpus, consisting of a bank account and real property located in North Carolina and Tennessee. On October 9, 2002, under the terms of the Will and the Trust, the Debtor became entitled to one-third of the Residuary Trust corpus. The relevant date, however, is July 16, 1998, the date upon which the Debtor filed the Voluntary Petition commencing his Chapter 7 bankruptcy case.

On the date that the Debtor commenced his case, the Co–Trustees were vested in the legal title to the Residuary Trust corpus. The Debtor, although vested with an equitable interest in the corpus of the Residuary Trust, had no right to payment as of that date. The spendthrift provisions governing the Residuary Trust applied to both the income to be received by the Debtor as well as the corpus to later be distributed as set forth in the Will. Therefore, on July 16, 1998, the restriction on the transfer of the Debtor's beneficial interest in the Residuary Trust was enforceable under Tennessee law, and § 541(c)(2) excludes the entirety of the Debtor's interest in the Residuary Trust from being property of his bankruptcy estate.

## V

In summary, pursuant to § 541(c)(2), the Debtor's interest in the Residuary Trust created under Mrs. Wachter's Will is not property of his bankruptcy estate. Accordingly, the Co–Trustees are not required to turnover the one-third of the Residuary Trust's corpus that the Debtor became entitled to receive at his father's death on October 9, 2002, nor is the Plaintiff entitled to an accounting thereupon. The Defendant's Motion for Summary Judgment will be granted, and the Plaintiff's Motion for Summary Judgment shall be denied.

A judgment consistent with this Memorandum will be entered.

## *ORDER*

For the reasons stated in the Memorandum on Motions for Summary Judgment filed this date, the court directs the following:

1. The Plaintiff's Motion for Summary Judgment filed by the Plaintiff on June 1, 2004, is DENIED.

2. The Motion for Summary Judgment filed by the Defendants on June 1, 2004, is GRANTED. The distribution to which the Debtor is entitled under the Trust provisions of the Last Will and Testament of his mother, AnnaLyn Ramey Wachter, dated February 27, 1992, is not property of the Debtor's bankruptcy estate and is therefore not subject to the turnover provisions of 11 U.S.C.A. §§ 542 or 543 (West 1993).

3. The Plaintiff's Complaint filed January 22, 2004, is DISMISSED.

SO ORDERED.